**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cr-20024-BLOOM**

UNITED STATES OF AMERICA

v.

JAMES STAFFORD SINCLAIR, JR.,

     Defendant.

_____/

**OMNIBUS ORDER ON MOTION TO DISMISS INDICTMENT AND MOTION FOR RECONSIDERATION**

     **THIS CAUSE** is before the Court on Defendant James Stafford Sinclair, Jr.'s Motion to Dismiss Indictment ("Motion to Dismiss Indictment"), ECF No. [86]. The United States of America (the "Government") filed a Response in Opposition, ECF No. [94], and Defendant filed a Reply, ECF No. [96]. Also before the Court is Defendant's Motion for Reconsideration of Order Denying Motion to Suppress ("Motion for Reconsideration"), ECF No. [97]. The Government filed a Response in Opposition, ECF No. [99], and Defendant filed a Reply, ECF No. [100]. The Court has carefully reviewed the Motion to Dismiss and Motion for Reconsideration, the opposing and supporting briefs, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, Defendant's Motion to Dismiss Indictment is denied, and Defendant's Motion for Reconsideration is denied.

**I.    FACTUAL BACKGROUND**

     In April 2025, the Government filed a six-count Superseding Indictment against Defendant charging him with (i) one count of Possession of Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1), (ii) three counts of Possession of a Firearm Not Identified by Serial

Number in violation of 26 U.S.C. § 5861(i), and (iii) two additional counts of Possession of a Firearm Not Identified by Serial Number in violation of 26 U.S.C. § 5861(i). ECF No. [27]. In November 2025, Defendant moved to "suppress all physical evidence obtained as a result of an unconstitutional search of [Defendant]'s vehicle and residence" as well as "all statements made pre and post Miranda." ECF No. [60] at 1. In January 2026, the Court denied the motion to suppress. ECF No. [81]. In February 2026, Defendant filed the instant Motion to Dismiss Indictment, challenging (i) the constitutionality of 18 U.S.C. § 922(g)(1) as applied to him, (ii) the constitutionality of 26 U.S.C. §§ 5845(a)(3), 5861(d), 5861(i) as applied to him and (iii) the constitutionality of 26 U.S.C. §§ 5845(a)(7), 5861(d), 5861(i) and 18 U.S.C. § 921(a)(25) as applied to him. ECF No. [86]. Finally, in April 2026, Defendant filed the instant Motion for Reconsideration regarding the Court's denial of his motion to suppress. ECF No. [97].

## II.   LEGAL STANDARD

### A.  Motion to Dismiss Indictment

An indictment is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). For an indictment to be valid, it must "(1) present[ ] the essential elements of the charged offense, (2) notif[y] the accused of the charges to be defended against, and (3) enable[ ] the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Schmitz*, 634 F.3d 1247, 1259 (11th Cir. 2011) (quoting *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009)).

A defendant may challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, constitutional reasons, double jeopardy, improper composition of the grand jury, and certain types of prosecutorial misconduct. *See United States v. Kaley*, 677 F.3d

1316, 1325 (11th Cir. 2012); Fed. R. Crim. P. 12(b). On a motion to dismiss the indictment, "[t]he indictment's allegations are assumed to be true and are viewed in the light most favorable to the government." *United States v. Rodriguez*, 635 F. Supp. 3d 1351, 1354-55 (S.D. Fla. 2022). "[A] court ruling on a motion to dismiss may not look beyond the four corners of the indictment, nor may it properly dismiss an indictment for insufficient evidence." *United States v. Baxter*, 579 F. App'x 703, 706 (11th Cir. 2014). Fundamentally, Federal Rule of Criminal Procedure 12(b) allows a Defendant to move to dismiss an indictment where the indictment is insufficient as a matter of law. *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) (citing *United States v. Korn*, 557 F.2d 1089, 1090–91 (5th Cir. 1977) and *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1082 (5th Cir. 1978)).

### B. Motion for Reconsideration

"Although the Federal Rules of Criminal Procedure do not specifically authorize motions for reconsideration, both the Supreme Court and [the Eleventh Circuit] have permitted parties to file such motions in criminal cases." *Serrano v. United States*, 411 F. App'x 253, 255 (11th Cir. 2011); *see United v. Phillips*, 597 F.3d 1190, 1999 (11th Cir. 2010).

"When adjudicating motions for reconsideration in criminal cases, courts tend to use the standards governing civil motions for reconsideration." *United States v. Holley*, No. 596CR00208SLBSGC1, 2021 WL 2867032, at *3 (N.D. Ala. July 8, 2021) (citing *United States v. Tubbs*, No. CR 2:14-00135-KD-N, 2021 WL 1031966, at *2 (S.D. Ala. Mar. 17, 2021); *United States v. Bueno-Sierra*, No. 93-CR-00567, 2020 WL 4015499, at *2 (S.D. Fla. July 16, 2020)). "The only grounds for granting a Rule 59[1] motion are newly discovered evidence or manifest

---

[1] In a criminal case, a defendant may only seek reconsideration under Rule 59, not Rule 60. *See Smith v. United States*, 433 Fed App'x 891, 892 (11th Cir. 2011) ("[W]e have held that Rule 60(b) cannot be used

errors of law or fact." *United States v. Brown*, No. 3:18-cr-89-J-34JRK, 2019 WL 7067091, at *1 (M.D. Fla. Dec. 23, 2019) (internal quotation marks and citations omitted). Therefore, a defendant must assert one of these grounds before a court will consider the defendant's motion.

Furthermore, motions for reconsideration must be timely. To be timely in a criminal case, "a criminal defendant must file a motion for reconsideration within 14 days of the order or judgment." *United States v. Sanders*, No. 22-11640, No. 22-11808, 2023 WL 2822129, at 1 (11th Cir. Apr. 7, 2023).

## III.   DISCUSSION

### A.  Motion to Dismiss Indictment

#### i.   As-Applied Challenge to 18 U.S.C. § § 922(g)(1)

Defendant challenges the constitutionality of 18 U.S.C. § 922(g)(1) as applied to him. ECF No. [86]. Defendant's argument is essentially that the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) set forth the applicable two-step test for evaluating the constitutionality of firearm regulations. First, the reviewing court is to ask whether "the Second Amendment's plain text covers an individual's conduct." 597 U.S. at 17. If so, the conduct is presumptively protected by the Constitution. *Id*. So, at step two, the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation"—that is, the tradition in existence "when the Bill of Rights was adopted in 1791." *Id.* at 24, 37. Only if the Government does so "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n. 10 (1961)).

---

to obtain relief in criminal proceedings.") (citing *United States v. Mosavi*, 138 F.3d 1365, 1366 (11th Cir. 1998)).

4

Under this framework, Defendant contends it is unconstitutional to apply § 922(g)(1) to him. ECF No. [86] at 2. His alleged conduct is covered by the plain text of the Second Amendment, and the Government cannot show a consistent American tradition of disarming people with a single "non-violent drug conviction." *Id.* at 2. Unfortunately for Defendant, binding Circuit authority forecloses this argument, affirming that categorical bans on felons possessing firearms do not offend the Second Amendment.

A bit of historical context is helpful. In *District of Columbia v. Heller*, the Supreme Court held that, based on the text of the Second Amendment and United States history, "the Second Amendment conferred an individual right to keep and bear arms." 554 U.S. 570, 594 (2008). This prompted an early challenge to restrictions on felons possessing firearms; in *United States v. Rozier*, a felon challenged § 922(g)(1), arguing that it violated the individual right to bear arms. 598 F.3d 768, 770 (11th Cir. 2010). Unpersuaded, the Eleventh Circuit upheld the restriction, relying on the Supreme Court's statement in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* (quoting *Heller*, 554 U.S. at 627). In other words, *Rozier* held that § 922(g)(1) was constitutional. *See id.*

*Bruen* was decided in 2022 and shortly followed by *United States v. Rahimi*. 602 U.S. 680 (2024). In *Rahimi*, the challenge was to § 922(g)(8), which prohibited those subject to a domestic violence restraining order from possessing a firearm. *Id.* at 684–85. The Supreme Court analyzed in depth the Nation's history of disarming individuals who pose "a clear threat of physical violence to another." *Id.* at 695–98. Ultimately, using the two-step process described above, the Supreme Court found the statute constitutional. *Id.* at 693.

These cases prompted a new challenge to § 922(g)(1). In *United States v. Dubois*, a felon once more challenged § 922(g)(1), arguing that *Bruen* had abrogated *Rozier* such that the Eleventh

Circuit should revisit the question of § 922(g)(1)'s constitutionality. 139 F.4th 887, 893 (11th Cir. 2025), *cert. denied*, No. 25-6281, 2026 WL 135685 (U.S. Jan. 20, 2026). Once again unpersuaded, the Eleventh Circuit held that Bruen did not abrogate *Rozier* because "*Bruen* repeatedly stated that its decision was faithful to *Heller*," *id.* at 893, and *Heller* had left untouched restrictions on firearm possession by felons. The Eleventh Circuit also found that *Rahimi* did not abrogate *Rozier*—far from it. *Id*. *Rahimi*'s only mention of felons, the *Dubois* court said, was to reiterate *Heller*'s presumptive approval of restrictions on felons in possession of firearms. *Id.* (citation omitted). If anything, it reinforces *Rozier*. *Id*. In essence, *Dubois* held that § 922(g)(1) survived *Bruen* and remained constitutional. Indeed, *Dubois* specifically upheld the constitutionality of § 922(g)(1) as applied to a defendant with a previous nonviolent drug conviction. *Id.* at 890.[2]

The implications for the present case are clear. That is, Defendant's argument is foreclosed by Eleventh Circuit precedent, as this Court remains bound by *Rozier*. *See United States v. Gilbert*, Criminal Action No. 21-00110-KD-N, 2023 WL 4708005, at *1 (S.D. Ala. July 24, 2023) (citation omitted) (stating Rozier "remains binding precedent in this circuit"), *aff'd*, No. 23-12969, 2025 WL 1683038 (11th Cir. June 16, 2025) (*per curiam*). Indeed, under the prior-precedent rule, the Court is required to follow binding Eleventh Circuit precedent unless the Eleventh Circuit

---

2 Eleventh Circuit cases since *Dubois* have reaffirmed that felons are not entitled to an "individualized determination" of their right to gun ownership. *United States v. Pierre*, No. 23-11604, 2025 WL 1721074, at *3 (11th Cir. June 20, 2025), *cert. denied*, 223 L. Ed. 2d 557 (Jan. 20, 2026). That is, these cases have affirmed that felons, *as a class*, are permissibly restricted from possessing firearms. *See, e.g.*, *id.*; *United States v. Mitchell*, No. 24-14234, 2026 WL 218800, at *2 (11th Cir. Jan. 28, 2026) ("[Defendant]'s as-applied constitutional challenge is foreclosed by *Rozier* . . . felons as a class could be excluded from firearm possession." (citation omitted)); *United States v. Telusme*, No. 25-10224, 2026 WL 471911, at *3 (11th Cir. Feb. 19, 2026) ("[Defendant]'s argument that § 922(g)(1) is unconstitutional as applied to felons like himself is squarely foreclosed by *Rozier*'s holding that felons are categorically disqualified from exercising their Second Amendment rights . . ." (citation omitted)); *United States v. Hicks*, 166 F.4th 933, 939 (11th Cir. 2026).

overrules it *en banc* or, alternatively, it is overruled by the Supreme Court. *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (per curiam).

In order for the Court to determine that an intervening Supreme Court decision has overruled an Eleventh Circuit decision, "the Supreme Court decision must be clearly on point." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003) (per curiam). "An intervening Supreme Court decision abrogates [prior] precedent only if the intervening decision is both 'clearly on point' and 'clearly contrary to' [the] earlier decision." *Dubois*, 139 F.4th at 892 (quoting *Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 743 (11th Cir. 2024)). But the Eleventh Circuit has already ruled that "*Bruen* did not abrogate *Rozier*" and neither did *Rahimi*. *Dubois*, 139 F.4th at 893. Since the Eleventh Circuit has concluded that *Rozier* "has not been clearly overruled or undermined to the point of abrogation, this [C]ourt is bound by that decision's holding that § 922(g)(1) does not violate the Second Amendment." *United States v. Hunter*, 645 F. Supp. 3d 1247, 1254 (N.D. Ala. 2022). Accordingly, Defendant's arguments that the indictment should be dismissed because it violates the Second Amendment are foreclosed by Eleventh Circuit precedent, and Count I of his Motion to Dismiss Indictment is denied.

> **ii.    As-Applied Challenge to (i) 26 U.S.C. §§ 5845(a)(3), 5861(d), and 5861(i) and (ii) 26 U.S.C. §§ 5845(a)(7), 5861(d), 5861(i) and 18 U.S.C. § 921(a)(25)**

Counts Two, Three, and Four of the Superseding Indictment charge Defendant with possession of three "short-barreled rifles"—defined in 26 U.S.C. § 5845(a)(3) as rifles with a barrel less than 16" in length—each not bearing a serial number, in violation of 26 U.S.C. § 5861(i) (a provision of the National Firearms Act, 26 U.S.C. 5801 *et seq.* ("NFA")). ECF No. [27] at 2; 26 U.S.C. § 5845(a)(3). Defendant argues these statutory provisions are unconstitutional as applied

to him because they "criminaliz[ing] his possession of these specific automatic rifles based exclusively on barrel length" violates the Second Amendment under *Bruen*. ECF No. [86] at 8.

Counts Five and Six charge Defendant with possession of firearm silencers—as defined in 26 U.S.C. § 5845(a)(7) and 18 U.S.C. § 921(a)(25)—each not bearing a serial number, in violation of 26 U.S.C. § 5861(i). ECF No. [27] at 2–3. Defendant argues these statutory provisions are unconstitutional as applied to him because "criminaliz[ing] his possession of these specific sound-moderating devices in the absence of a historical tradition supporting such regulation" violates the Second Amendment under *Bruen*. ECF No. [86] at 13.

As to the short-barreled rifles, Defendant argues that *United States v. Miller* "did not identify any Founding-era statute regulating firearms based on barrel length." *Id.* (citing 307 U.S. 174 (1939)). Therefore, it does not preclude the present dispute. *Id.* at 9. And indeed, Defendant argues there is no historical tradition of regulating rifles based on barrel length. *Id.* at 9–10. This absence of regulation is "constitutionally significant under *Bruen*." *Id.* at 10. Moreover, Defendant argues that short-barreled rifles are not "dangerous and unusual" such that they would fall outside of the Second Amendment's protections. *Id.* at 11. Indeed, during the Founding era, short-barreled rifles were not regulated as if they fell outside the scope of protected arms. *Id.* at 12.

As to the suppressors, Defendant argues that they fall within the plain text of the Second Amendment, as they "are devices attached to protected firearms and are integral to the manner in which firearms are used." *Id.* at 14. Thus, the burden falls on the Government to produce a Founding-era tradition of regulating noise-moderating devices, which the Government cannot do, as not such regulation exists. *Id*. at 14–15. Finally, Defendant argues that suppressors are not "dangerous and unusual." *Id.* at 15. Indeed, there is no Founding-era analogue treating sound-regulating devices as outside constitutional protection. *Id.* at 16.

The Government responds that "[t]he Second Amendment does not guarantee an unequivocal right to possess short-barreled rifles or firearm silencers." ECF No. [94] at 13. In fact, in *United States v. Miller*, the Supreme Court stated that "we cannot say that the Second Amendment guarantees the right to keep and bear 'an unregistered sawed off shotgun having a barrel of less that eighteen inches in length,'" *Id.* (quoting 307 U.S. at 175–78). That holding was not overruled by *Heller* or *Bruen*. *Id.* at 14. *Heller* even acknowledged that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* (quoting 554 U.S. at 625). And several courts, including the Eleventh Circuit, have cited *Miller* to reject similar challenges to the constitutionality of § 5861(d). *Id.* (collecting cases). Ultimately, the Government contends that "[b]inding case law is clear:" the NFA does not violate the Second Amendment.

Defendant replies that the Government fails to identify a historical tradition supporting the statutory provisions at issue. ECF No. [95] at 4. Neither *Miller* nor the "dangerous and unusual" exception to Second Amendment protections satisfies the historical test required by *Bruen*. *Id.*

The Court agrees with the Government and begins with the short-barreled rifles in this case. In *Miller*, the Supreme Court confronted a Second Amendment challenge to the NFA based on possession of a short-barreled shotgun. 307 U.S. at 175. The Supreme Court rejected the challenge, concluding that, absent "any evidence tending to show that possession or use of a [short-barreled shotgun] at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, [it could not] say that the Second Amendment guarantees the right to keep and bear such an instrument." *Id.* at 178. In *Heller*, the Supreme Court "concluded, for the first time, that the Second Amendment guarantees an individual right to possess weapons unconnected with militia service." *United States v. Tagg*, 572 F.3d 1320, 1326 (11th Cir. 2009) (citing *Heller*,

9

554 U.S. at 573–619). "The [*Heller*] Court emphasized, however, that the 'right secured by the Second Amendment is not unlimited,' and one 'important limitation' came from the Court's previous opinion in *Miller*." *Tagg*, 572 F.3d at 1326 (citing *Heller*, 554 U.S. at 626–27). That is, *Heller* expressly did not overrule *Miller*. *Id.*

In 2009 (after *Heller* was decided), the Eleventh Circuit relied on *Miller* to uphold a conviction for aiding and abetting the unlawful possession of unregistered pipe bombs. *See Tagg*, 572 F.3d at 1323–27. Then, in 2020, the Eleventh Circuit rejected a Second Amendment challenge to the NFA. *United States v. Wilson*, 979 F.3d 889, 903 (11th Cir. 2020). The court explained that "the Supreme Court squarely rejected [the defendant's] constitutional argument over 80 years ago" in *Miller* when it found that "'we cannot say that the Second Amendment guarantees the right to keep and bear' an unregistered sawed-off 'shotgun having a barrel of less than eighteen inches in length.'" *Id.* (cleaned up) (quoting *Miller*, 307 U.S. at 175– 78). Then, in *United States v. Robinson* in 2025. No. 23-12551, 2025 WL 870981, at *4 (11th Cir. Mar. 20, 2025), *cert. denied*, 146 S. Ct. 995, 223 L. Ed. 2d 428 (2025), the court explained that while *Bruen* established the proper standard for assessing a challenged firearm regulation, it "did not overturn all prior caselaw addressing the Second Amendment . . . . More importantly, the *Bruen* majority also did not pass on—let alone criticize—*Miller*." *Id*. (citations omitted). The Court concluded, first, that *Miller* remains "binding as the Supreme Court has not overturned it," and "regulation of short-barreled *shotguns* is constitutional under *Miller*." *Id.* at 5 (citations omitted) (emphasis added). The court explained that regulation of short-barreled *rifles* is permissible under the Second Amendment, given that rifles and shotguns share a common dangerousness. *Id*.

Though unpublished, the Eleventh Circuit's decision in *Robinson* is highly persuasive. *Miller* remains good law, and its logic plainly applies to short-barreled rifles as it does to short-

10

barreled shotguns. Thus, Defendant's as-applied challenge to the provisions of the NFA related to short-barreled rifles must fail.

The same is true regarding Defendant's as-applied challenge to the provisions of the NFA related to silencers. As the Court noted earlier, the first step of the *Bruen* analysis is to assess whether "the Second Amendment's plain text covers an individual's conduct." 597 U.S. at 17. In *Bruen*, the Court explained its holding in *Heller* that the Second Amendment protects those arms that are "in 'common use' for self-defense today." *Bruen*, 597 U.S. at 47; *see also United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023) ("*Bruen* step one involves a threshold inquiry . . . whether the weapon at issue is in common use today for self-defense . . ." (internal quotation marks omitted)). By contrast, the Second Amendment does not protect "dangerous and unusual weapons." *Id.* at 21. Underlying all of this is the reality that the Second Amendment applies to "bearable arms," "including components necessary to render the weapon operable." *United States v. Beaty*, No. 6:22-cr-95-PGB-DCI, 2023 WL 9853255, at *8 (M.D. Fla. Jan. 20, 2023).

Applying this framework, the Court finds that silencers are not weapons commonly used today for self-defense. That is because it does not appear that silencers are even arms at all, such that they could possibly be protected by the Second Amendment. Indeed, Defendant admits as much, stating, "A suppressor is not an independent weapon; it is an accessory designed to reduce the sound signature of a firearm." ECF No. [86] at 13. But nowhere in *Bruen* is the word "accessory" mentioned. That a silencer may be useful in the operation of a firearm does not render it a bearable arm itself. *Beaty*, 2023 WL 9853255, at *8. It simply is "not capable of expelling a projectile, and does not facilitate that purpose." *Id.* (citing *United States v. Hasson*, 2019 WL 4573424, at *3–5 (D. Md. Sept. 20, 2019), *aff'd*, 26 F.4th 610 (4th Cir. 2022).

11

While the Eleventh Circuit and the Supreme Court have not squarely addressed whether a silencer is protected by the Second Amendment, *United States v. Bolatete*, 977 F.3d 1022, 1036 (11th Cir. 2020), other courts to address the issue have found that a silencer is a mere accessory, not a weapon, and therefore is categorically ineligible for being deemed a "bearable arm." *See United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) ("A silencer is a firearm accessory; it's not a weapon in itself . . . ."); *Beaty*, 2023 WL 9853255, at *8 ("Simply put, a silencer is not a firearm, because it [is] not capable of expelling a projectile, and does not facilitate that purpose."); *United States v. Al-Azhari*, No. 8:20-cr-206-T-60AEP, 2020 WL 7334512, at *3 (M.D. Fla. Dec. 14, 2020) ("The Court finds that a silencer is not a bearable arm within the meaning of the Second Amendment."); *United States v. Berger*, No. 5:22-cr-33, 2024 WL 449247, at *17 (E.D. Pa. Feb. 6, 2024) ("[A] silencer . . . is merely an accessory which is unnecessary to the essential operation of a firearm."); *United States v. Saleem*, 659 F.Supp.3d 683, 698 (W.D. N.C. 2023) ("A firearm is effective as a weapon of self-defense without the use of a silencer, but . . . a silencer serves no purpose without a firearm."); *United States v. Lightner*, No. 8:24-CR-21-WFJ-CPT, 2024 WL 2882237, at *3 (M.D. Fla. June 7, 2024) ("A silencer is not a 'bearable arm,' nor is it necessary to the use of a 'bearable arm.'"). Indeed, some courts have gone further, plainly categorizing silencers as "dangerous and unusual." *Beaty*, 2023 WL 9853255 at *8 ("[E]ven if a silencer qualifies as a firearm . . . [it] is an unusual weapon."). Thus, Defendant's argument fails at the first step of *Bruen*, as he cannot show his conduct was protected by the Second Amendment.

## B. Motion for Reconsideration

As the Court explained earlier, motions for reconsideration must be timely. To be timely in a criminal case, "a criminal defendant must file a motion for reconsideration within 14 days of the order or judgment." *Sanders*, 2023 WL 2822129, at 1. The Eleventh Circuit has described this

requirement as being a matter of "the district court's jurisdiction." *United States v. Arrate-Rodriguez*, 160 F. App'x 829, 833 (11th Cir. 2005)

In his Motion for Reconsideration, filed April 12, 2026, Defendant asks the Court to reconsider its Order denying Defendant's Motion to Suppress. ECF No. [97]. That Order was pronounced in court following the evidentiary hearing on January 8, 2026, and memorialized on January 9, 2026. *See* ECF Nos. [77] and [81]. Thus, Defendant's Motion for Reconsideration is untimely.

Even assuming the Motion for Reconsideration was timely, the Motion for Reconsideration is without merit, as Defendant offers no viable grounds for reconsideration. Defendant's Motion for Reconsideration begins by reiterating his argument that the officers lacked probable cause particularized to Defendant at the time they stopped and seized him, ECF No. [97] at 7–8, which Defendant argued in his initial Motion to Suppress, ECF No. [60] at 2–3. He argues that the "small yellow backpack did not create probable cause to search the Malibu for four rifles." ECF No. [97] at 8–9. However, the Court was aware of the backpack and its connection to the issue of probable cause, having heard testimony about the size of the backpack and its capacity to conceal firearms at the suppression hearing. ECF No. [95] at 11–13; 27–28; 70; 76. Defendant next argues that the automobile exception does not justify a search of the concealed areas of the vehicle or the trunk. ECF No. [97] at 9–10. However, Defendant made substantially the same argument in his initial Motion to Suppress, ECF No. [60] at 2–3, and further argued the same at the evidentiary hearing, ECF No. [95] at 69–73. The Court addressed that argument at the hearing, *id.* at 81–82, and Defendant does not raise a new argument on that point. Defendant contends that the plain-view theory does not justify the broader search. ECF No. [97] at 10–11. However, that argument was presented in his brief, ECF No. [60] at 3–4, and argued at the hearing.

13

Defendant cites to *Chimel v. California*, 395 U.S. 752 (1969), a case that addresses searches incident to an arrest, in support of his position. ECF No. [97] at 11–12. But the Court was clear that its opinion did not depend on the search being incident to an arrest. ECF No. [95] at 71. Defendant asserts that the pre-*Miranda* warning questioning about how to access the trunk was a custodial interrogation, and the firearms were the direct fruits of that interrogation. Again, Defendant raised this argument at the hearing, ECF No. [95] at 69–71. Defendant fails to raise a basis for the Court to find that it erred in its decision.

Defendant raises several additional arguments regarding the alleged pre-*Miranda* warning questioning of Defendant regarding how to access his trunk. ECF No. [97] at 13–16. But again, the Court's decision did not depend on any consent or information from Defendant; the Court found that the permissibility of the search depended on the applicability of the automobile exception and the existence of probable cause, ECF No. [95] at 70–73; 81–82, and that officers could access the trunk regardless of Defendant's information, *id.* at 82.

Defendant next argues that "[c]ontinued police pressure after invocation also supports reconsideration of the coercion issue." ECF No. [97] at 16–17. But Defendant raises no new arguments. Defendant argued in his suppression brief that he was subject to "coercive tactics," ECF No. [60] at 4, and the Court squarely found that "Defendant knowingly and voluntarily waived his *Miranda* rights and that consent to search the home was freely given." ECF No. [95] at 82. Defendant points to no new evidence or misapprehension of fact or law made by the Court, merely arguing that based on the evidence the Court already heard, it should reconsider whether that consent was voluntary. ECF No. [97] at 17.

Defendant argues suppression is appropriate based on an analogous case from the District of Maine. *Id.* at 17–18 (citing *United States v. Kruger*, 151 F. Supp. 2d 86 (D. Me. 2001)). That

case is not binding authority and already existed prior to Defendant's suppression motion. Moreover, this argument merely reiterates Defendant's argument from the suppression hearing that because Defendant "wasn't Mirandized," officers should never have had information from him regarding accessing the trunk, and "therefore, they cannot go into the trunk and find the weapons." ECF No. [95] at 71.

Finally, Defendant argues that the independent-source doctrine does not save the search of the trunk. ECF No. [97] at 18–19. But neither the Government nor the Court relied on this doctrine to justify the search of the trunk.

At bottom, Defendant posits arguments he previously made and does not point to a change in controlling law, new evidence, or clear error or manifest injustice. *United States v. Grobman*, 548 F. Supp. 3d 1344, 1347 (S.D. Fla. Apr. 30, 2021). As such, Defendant's Motion for Reconsideration lacks merit and must be denied.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss Indictment, **ECF No. [86]**, is **DENIED**.

2. Defendant's Motion for Reconsideration, **ECF No. [97]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 29, 2026.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of record

15